**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GARY KUZMIN | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:07-cv-00554-TJW |
| THERMAFLO, INC. ET AL., | § | |
| | § | |
|     Defendant. | § | |
| | § | |
| | § | |
| GARY KUZMIN | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:08-cv-0031-TJW-CE |
| PETER HOWARD, ET AL., | § | |
| | § | |
|     Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

On May 20, 2009, the Court held a hearing in this matter and sanctioned plaintiff's counsel, Mr. John Exline for his unethical conduct in pursuing plaintiff's default judgment motion in the above referenced cases. This opinion discusses the reasons for the Court's decision.

**I.**  **Discussion**

Plaintiff Gary Kuzmin has filed three different cases against related defendants in the Marshall Division. These cases are styled *Kuzmin v. Thermaflo, Inc.*, 2:07-cv-00553-DF-CE (filed Dec. 19, 2007) ("*Kuzmin I*"); *Kuzmin v. Thermaflo, Inc.*, 2:07-cv-00554-TJW (filed Dec.

1

19, 2007) ("*Kuzmin II*"); and *Kuzmin v. Howard*, No. 2:08-cv-00031-TJW-CE (filed Jan. 28, 2008) ("*Kuzmin III*"). It is undisputed that the three cases filed by plaintiff are against related defendants,[1] and all three cases arise out of Comair's purchase of Thermaflo.

With regard to the two cases before this Court, *Kuzmin II* and *Kuzmin III*, it is undisputed that service was perfected against all the defendants, Peter Howard, Thermaflo, Inc. ("Thermaflo") and Comair Rotron, Inc. ("Comair"). Defendant Peter Howard was served personally, and service on Steve Shamoun, Thermaflow and Comair was perfected by serving Venessa Silva, the executive assistant to the chief executive officer of Comair. Further, both sides agree that plaintiff's counsel David Schiller emailed defendants' counsel, David R. Shevitz with copies of the three complaints.[2] Defendants however failed to timely respond due to what they contend was a misunderstanding between the defendant parties and their attorneys.

Plaintiff filed Motions for Entry of Default in *Kuzmin II* and *Kuzmin III* on July 11, 2008, and the clerk entered defaults in both these cases on July 14, 2008. At that time, there had been some progress in the *Kuzmin I* case.[3] Plaintiff then filed Motions for Default Judgment (*Kuzmin II*, Dkt No. 8; *Kuzmin III*, Dkt No. 10). The Court held a hearing on plaintiff's motions for default judgment in both these cases on October 9, 2008. Plaintiff presented evidence of default in these cases at the hearing. Defendants did not appear for the hearing. Defendants first appeared in both these cases on October 20, 2008, filing motions to set aside default and their opposition to entry of default judgment. (*Kuzmin II*, Dkt. No. 18; *Kuzmin III*, Dkt. No. 17).

---

[1] Defendants in the three cases include ThermaFlo, Comair, Peter Howard and Steve Shamuom (collectively, "defendants").
[2] Both parties agree that defendants' counsel did not accept service on behalf of the defendants.
[3] Plaintiff filed a Motion for Temporary Restraining Order in *Kuzmin I* on March 3, 2008. Dkt. No. 4. Defendants made an appearance and filed a response to the motion. Dkt. No. 6. The Magistrate Judge, Honorable Chad Everingham held a conference, which defendants' counsel attended on March 7, 2008. Defendants also filed other motions in that case. Dkt. Nos. 7, 9.

Finding defendants' counsel's conduct unintentional, the Court granted defendants' motions to set aside default and denied plaintiff's motions for default judgment.[4] (Mem. Op. & Order, *Kuzmin II*, Dkt. No. 28; *Kuzmin III*, Dkt. No. 28).  As part of that order, the Court also directed Plaintiff's counsel, Mr. John Exline, to show cause why he should not be sanctioned for the manner in which he pursued plaintiff's motions for default judgment before this Court.  The Court found that Mr. Exline had violated both the local rules of this Court as well the Texas Supreme Court's Creed on Professionalism.  Mr. Exline presented various arguments both in his response to the Court's order as well as at the hearing held in this matter. (*Kuzmin II*, Dkt. No. 30; *Kuzmin III*, Dkt. No. 29).  The Court, however, finds these arguments unpersuasive.

    A.    **Violation of Local Rules**

This district's local rules impose a duty upon every party to "notify the court and opposing counsel of any collateral proceeding."  Local Rule CV-42.  The Court found that Plaintiff's counsel did not indicate at any time – from the time he filed his complaints to the day he appeared for the hearing – in the briefs filed in these cases or otherwise, that there was a third related case which had been timely answered.[5]

It is the attorney's duty to file a civil cover sheet with each complaint. *See* Local Rule CV-4 ("At the commencement of the action, counsel shall prepare and file the civil cover sheet, Form JS 44, along with the complaint.").  Plaintiff's counsel inexcusably failed to include such civil cover sheets along with each of the cases before this Court.  In his response,[6] Mr. Exline

---

[4] The Court has presently stayed both of these cases pending resolution of arbitration.
[5] Mr. Exline himself admitted at the hearing that all three complaints involved the same facts and arose from the same transaction. *See* Transcript, Kuzmin II, Dkt. No. 14.
[6] As a preliminary matter, the Court notes that counsel's brief is poorly written, replete with improper spelling and bad formatting.  By submitting a poorly written brief, the attorney fails the Court as well as the client. *See High v. Rhay*, 519 F.2d 109, 113 (9th Cir. 1975) (finding that poor writing style makes a brief "worthless"); *see also Foster*

3

contends that he attached civil cover sheets at least in *Kuzmin I & II*. This, however, is incorrect. The Court finds no civil cover sheet attached to the complaint in *Kuzmin I*. As to *Kuzmin II*, the clerk's office alerted counsel of the deficiency and required him to provide a sheet for that case. *See* Response, *Kuzmin II*, Dkt. No. 30, Ex. 3. Even then, he failed to clearly denote on that sheet which case was related to *Kuzmin II*, simply stating that there was a "separate case among same parties being filed at the same time."[7] *See* Response, *Kuzmin II*, Dkt. No. 30, Ex. 1. Without a valid related case number on the civil cover sheet, the clerk's office was unable mark the case docket as having a related case. It was counsel's responsibility to make sure that the proper civil cover sheets were filed to the proper dockets and the docket reflected the cases accurately. Counsel cannot find fault with the clerk's office for attempting to help him fulfill his duties. As to *Kuzmin III*, Mr. Exline concedes he did not attach a civil cover sheet in that case and did not indicate in any way on the docket that it was related to two other cases. Counsel blames this on the negligence of his legal assistant. The Court, therefore, finds that Mr. Exline violated the Court's local rules.

**B.     Violation of the Texas Lawyers Creed - A Mandate for Professionalism**

The Texas Supreme Court has adopted the Texas Lawyers Creed on Professionalism. *See* Texas Lawyers Creed - A Mandate for Professionalism, *available at* http://www.texasbar.com. In relevant part, the Creed provides that a lawyer will "not take advantage, by causing any default or dismissal to be rendered, when [he or she knows] the identity of an opposing counsel,

---

*v. Westinghouse Elevator Co*., 1997 WL 360948 (Tex. App.—Amarillo June 27, 1997) (denying a motion for leave to file an amended brief that was "replete with formatting mistakes and typographical errors").

[7] Plaintiff's counsel suggests that it was this civil cover sheet that informed the Court of the related active case prior to the default judgment hearing. This is incorrect. It was the Honorable Chad Everingham, who is the Magistrate Judge on two of the three *Kuzmin* cases, and who had previously conducted a hearing in *Kuzmin I*, who, upon learning of the default being sought in these two cases, alerted the Court to the related case.

without first inquiring about that counsel's intention to proceed." *See id.*, par. III, no. 11. H

Mr. Exline appeared before the Court and argued plaintiff's motions on October 9, 2008. *See* Transcript, *Kuzmin II*, Dkt. No. 14. When the Court raised to counsel the existence of *Kuzmin I* at the hearing, Mr. Exline represented to the Court that he had "communicated [with defendants] about these cases" and it was "somewhat inexplicable about why they would answer in one law suit and not the other." Mr. Exline then proceeded to represent to the Court that he had not given any type of indication of the default or a hearing to the opposing counsel that he had previously communicated with because: "We don't know that that counsel for sure will be representing them in the litigation. We don't know for sure who would be representing them in this litigation. It's certainly possible that the same counsel would be representing them, but we don't know that for a fact." When the Court indicated that law existed which imposed a duty to notify a known opposing counsel of such a hearing, Mr. Exline argued that such duty only existed when an attorney had made an appearance representing the party in the matter.

In its show cause order, the Court found this conduct to have been deceitful not only toward the defendants, but also to the Court. The Court found that plaintiff's counsel David Schiller knew who defendants' counsel would be from the very beginning of this dispute, and had emailed defendants' counsel David R. Shevitz copies of the three complaints. On March 4, 2008, Mr. Exline himself sent defendants' counsel a copy of the TRO application in *Kuzmin I*. Further, plaintiff's counsel was in continuous communications with defendants' counsel during the months following service upon defendants, attempting to resolve plaintiff's claims. In April 2008, the parties discussed the possibility of mediation towards a settlement. Emails between the

two parties in May 2008 relate to scheduling of the mediation.[8] However, in July 2008, plaintiff filed motions for entry of default in *Kuzmin II* and *Kuzmin III*. Defendants' counsel Shevitz avers that in August 2008, he made two phone calls to plaintiffs' counsel but was never informed of the default pending in these two cases.

Mr. Exline previously argued that all communications with defendants' counsel related only to resolving the dispute in *Kuzmin I*, and that defendants had communicated to him that they were not interested in defending claims from the other two cases. The Court found these arguments to be unreasonable. The Court found that Mr. Exline knew the identity of "an opposing counsel" but proceeded unethically to obtain default judgment without giving the slightest of notice to defendants' counsel. *See Owens v. Neely*, 866 S.W.2d 716, 720 & n. 2 (Tex. App.— Hous. [14 Dist.] 1993, no writ) (finding that counsel acted unethically under the Texas Lawyers Creed, when "he deliberately sought a default judgment against parties he knew were represented by an attorney and who had filed an answer under the wrong cause number by mistake.").

In his response, Mr. Exline continues his illogical line of arguments. He argues that there is indeed a "possible explanation" for his view that the defendants made a "conscious decision" not to pursue a defense in two of the cases while deciding to defend *Kuzmin I*. Mr. Exline argues that because Comair and Thermaflo went into receivership in July 2008, they likely lost the ability to pay counsel to defend them in two of the three cases. Mr. Exline fails to see the irrationality of his argument. Almost identical complaints were filed by the plaintiff in *Kuzmin I*

---

[8] Following the Court's show cause order, defendants provided the Court with even more emails that were exchanged between plaintiff's counsel and defendants' counsel in April and May of 2008, discussing settlement and mediation of the disputes between the parties. *See Kuzmin II*, Docket 33, Ex. A, B.

and *Kuzmin II* against the same two defendants on the same day. According to Mr. Exline, defendants answered, filing motions, appearing for hearings and pursuing settlement – all long before the defendants went into receivership – in one case, but did not have the money to do so in a second case in which plaintiff had asserted identical claims arising out of the same set of facts.

At the show cause hearing, Mr. Exline represented to the Court that when he spoke to defendant Steve Shamoun following the default judgment hearing, Shamoun indicated that he had not hired an attorney to represent him in *Kuzmin III*. Mr. Exline argued that this contradicts what Shamoun and defendants' counsel have stated in their sworn affidavits. Mr. Exline contends that the Court should credit his recollection and find that he had good reason to believe that defendants in *Kuzmin II & III* were not represented by counsel. Even if the Court were to agree with Mr. Exline on his recollection of his communication with defendant Shamoun, counsel has no credible evidence to offer on why he believed defendants Comair and Thermaflo would choose to defend only one of the two related cases brought against them. The Court, therefore, finds that plaintiff's counsel had no good reason to believe that the same counsel would refuse to represent the defendants in these two cases.

Similarly, Mr. Exline continues to pointlessly belabor what defendants' counsel did not do in these two cases up until the time that he sought default. The Court has already rejected his argument that defendants' counsel willfully ignored these two cases.

Another argument is that there was an insurmountable gap in the parties' settlement positions, which in Mr. Exline's view was "the death knell for settlement." The Court fails to see how failure of settlement discussions could ever be a valid justification for unethical conduct.

7

Mr. Exline contends that the pertinent time for judging his conduct should be between July 11, 2008, when he filed for entry of default, and October 9, 2008, when he appeared for the default judgment hearing. The Court disagrees. The duty to notify opposing counsel arose when plaintiff's counsel first learned of the existence of such counsel. Thereafter, a continuing ethical obligation existed on counsel's part to notify opposing counsel before seeking a default judgment. Even considering the time frame that Mr. Exline himself views as pertinent, he had almost three months from the entry of default to the hearing, but failed in his duty to alert opposing counsel in any way of the entry of default or the upcoming hearing. It is not until the Court ordered Mr. Exline to contact known opposing counsel, did he do so. It is notable that the defendants answered both these cases within days, filing their opposition to the default.

The last of Mr. Exline's arguments is just as meritless. Mr. Exline argues that his conduct was in line with this duty to zealously represent his client. Plaintiff's counsel urges the Court not to "draw the line such that lawyers are reluctant to zealously represent their clients in fear of sanction by a court who differs with their judgment." The boundaries of ethical behavior should be abundantly clear to an experienced attorney such as Mr. Exline.[9] "Zealous representation does not include skirting ethical obligations." *U.S. v. De La Rosa*, 171 F.3d 215, 220, n. 19 (5th Cir. 1999). The ABA's Model Code of Professional Responsibility mandates that a client's representation can only be within the "bounds of the law." *See* MODEL RULES OF PROF'L RESPONSIBILITY DR 7-102, EC 7-10 ("The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process."). Furthermore, the ABA Model Rules of Professional

---

[9] Mr. Exline represents that he has been a civil litigation lawyer for twenty eight years and has had an "AV Martindale-Hubbell" rating for more than 15 years.

Conduct impose on the attorney, a duty of candor toward the tribunal. *See* MODEL RULES OF PROF'L CONDUCT R. 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse."). It is the attorney, rather than his client, that the Court relies upon to ensure that the client's case is presented in an ethical manner. The Court cannot endorse Mr. Exline's view that everything is fair under the guise of zealous client representation.

Mr. Exline is directed to report to the Court within six months of the date of this order as required by the sanctions issued against him.

SIGNED this 20th day of May, 2009.

*T. John Ward*
T. JOHN WARD
UNITED STATES DISTRICT JUDGE